UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BASSILLIO NESBY                                                                    PLAINTIFF

V.                          No. 4:18CV00039-BRW-JTR

TIM RYALS, Sheriff, Faulkner County;
CHRIS RIEDMUELLER, Captain;
SCOTT HUFFMAN, Lieutenant;
and BOBBIE SPIVEY, Sergeant                                                DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Wilson can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Bassillio Nesby ("Nesby") filed this *pro se* action alleging that, while he was incarcerated at the Faulkner County Detention Center ("FCDC"), Defendants violated his rights under the First Amendment, the Religious Freedom Reformation

Act ("RFRA"), and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA").[1]

On June 6, 2018, the Court dismissed: (1) Nesby's RFRA claim; and (2) his claims against Defendants in their official capacities. *Docs. 10 & 13*. In his remaining First Amendment and RLUIPA claims, Nesby specifically alleges that: (1) Defendant Sheriff Tim Ryals ("Ryals") refused his requests to arrange a visit with a spiritual advisor from the Jehovah's Witnesses; and (2) Defendants Ryals, Captain Chris Riedmueller ("Riedmueller"), Lieutenant Scott Huffman ("Huffman"), and Sergeant Bobbie Spivey ("Spivey") denied his requests "for spiritual counsel" and to "study with [his] religious sect." He seeks only monetary damages for the individual capacity claims he has asserted against Defendants. *Docs. 1 & 8*.[2]

On February 12, 2019, Defendants filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts. *Docs. 24, 25 & 26*.[3] Although notified of

---

[1]After Nesby later notified the Court that he was no longer incarcerated in the FCDC, the Court granted his free-world application to proceed *in forma pauperis*. *See Docs. 9 & 14*.

[2]The Court has construed Nesby's *pro se* Complaint and Amended Complaint, together, as constituting his claims. *See Kiir v. N.D. Pub. Health*, 651 Fed. Appx. 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint); *Cooper v. Schriro*, 189 F.3d 781, 783 (8th Cir. 1999) (*pro se* pleadings must be liberally construed).

[3]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the

his right to file a Response, Nesby has not done so. *See Doc. 27*. Thus, the issues are joined and ready for disposition.

## II.  Facts

Before addressing the merits of Defendants' Motion for Summary Judgment, the Court will summarize the relevant facts, all of which are *undisputed*.[4]

1.  On October 18, 2017, Nesby was booked into the FCDC for a parole violation. *Doc. 26, Ex. A-1 at 2 & 7* (Arrest/Booking).

2.  In an undated intake questionnaire, he indicated his religious preference as "Jehovah Witness." *Id. at 9*.

3.  On October 20, 2017, Nesby filed a grievance stating: "Need to set up a bible study with the local Jehovah Witnesses. Can you contact the kingdom hall

---

moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

[4]Nesby did not respond to Defendants' Motion for Summary Judgment or otherwise contest anything in Defendants' Statement of Facts (*Doc. 26*). Accordingly, all of those facts, which form the basis for their Motion for Summary Judgment, are now deemed to be undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."); *Jackson v. Ark. Dep't of Educ. Vocational & Technical Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (citing Local Rule 56.1(c) in concluding that the plaintiff "forfeited her ability to contest the facts presented" by defendant by failing to respond to defendant's summary judgment motion).

… in Faulkner County. I need bible publications and prayer."[5] *Doc. 26, Ex. A-2 at 32* (Requests/Grievances).

4. On October 21, 2017, he filed a grievance stating: "Would like to set up bible study with the local Jehovah Witness a.s.a.p. Thank you." *Id. at. 31*.

5. On October 23, 2017, Defendant Huffman responded to both grievances, stating that he would forward Nesby's requests to the chaplains. *Id. at 31-32*.

6. On October 26, 2017, Nesby filed a grievance stating:

> This is the second request to have the local Jehovah Witnesses to meet with me so I can start a bible study and receive the proper study materials that I need for my R.P. I had hoped this request would have been met with urgency since this is a fundamental right of mine. Can you whomever I am addressing resolve this matter in a timely fashion concerning it has already been a week in counting. There should be no reason for this matter to prolong any longer. Thank you.

*Id. at 29*. The same day, Defendant Huffman responded: "I will send a text to our Chaplains and address this now." *Id.*

7. On October 31, 2017, Nesby filed a grievance, addressed to the attention of Defendant Riedmueller, which stated: "This will be the 3rd grievance/request for a Jehovah Witness bible study which I have been here going on three weeks and I have heard nothing concerning this issue." *Id. at 26*. On

---

[5]Jehovah's Witnesses use the term "Kingdom Hall" for their place of worship. https://www.jw.org (accessed Aug. 14, 2019).

November 3, 2017, Defendant Huffman responded: "I have made the chaplains aware of your request." *Id.*

8. On November 3, 2017, Nesby filed a grievance stating:

> Section 21 of the Faulkner County inmate rules and regulation states that inmates are allowed a one hour visit from a religious sect of his choice. I study with the Jehovah Witnesses, therefore, I would like for a study to be set up on my behalf. Thank you. Any further delay in this matter can only resolve with me filing a ACT 1983 FORM for I have exhausted the remedies by submitting 4 grievances in the order stated. 1. To the grievances officer/chaplain. 2. To the staff corporal. 3. To the staff Lt. Huffman. 4. To Capt. [Riedmueller].

*Id. at 24.* The same day, Defendant Huffman responded: "As stated previously, the Chaplains are aware of your request." *Id.*

9. On November 12, 2017, Nesby filed a grievance stating: "Would like to study with Jehovah Witnesses." *Id. at 22.* On November 16, Defendant Spivey responded that his request was "forwarded to chaplain." *Id.*

10. At 9:17 a.m. on November 16, 2017, Nesby filed a grievance, which he characterized as an "appeal" to non-party Lt. Lacretia Flowers. In this grievance, he stated the following:

> [T]his is the seventh request I have put in for a bible study with the Jehovah's Witnesses. I have been here since Oct the 18, 2017 and still no word as to when my bible study will start. Also I have spoken with not one but two of the new chaplains at unit 1 when I was a slave over there which both assured me that they were working on getting me a study started. Nevertheless I've heard nothing, so that said this will be my last grievance in this matter, which at this time I would like to request a copy of each grievance that I have submitted on this matter.

5

*Id.* at 20. About two hours after Nesby wrote this grievance, Flowers responded by explaining to Nesby that he should "get with Lieutenant Huffman about this matter." *Id.* At 12:30 p.m. on November 16, 2017, Nesby filed a grievance, labeled as an "appeal." In this grievance, Nesby stated that he: "Would like to request a bible study with the local Jehovah's Witnesses and can I have a copy of all the grievances I have sent out concerning this matter." *Id.* At 4:36 p.m., Defendant Spivey responded that his grievance had been "forwarded to chaplain." *Id.*

11. On November 18, 2017, Nesby filed a grievance, addressed to Defendant Riedmueller, which stated:

> I have been trying since Oct 18 to have a bible study with the local Jehovah Witnesses. I have even spoke with both chaplains who assured me that they were trying to contact the local kingdom hall. I cannot begin to state how disappointed I am because this matter has not been resolved, however I have no other option but to ask that you look into this matter personally which I know you might not even receive this grievance. But for my records I have submitted this grievance which I must inform you that this is the ninth grievance I have filed concerning this matter which I keep requesting a copy of my grievance process and none has been given. I know by law it is my right to study with the religious sect of my choice therefore if you cannot get the Witnesses to come and study with me, release me so I can go and study with them or give me a copy of my grievance process so I can begin filing my act 1983 form correctly. For I have exhausted all remedies and I cannot allow my rights to be violated any more. Thank you.

*Id.* at 19. On November 27, Defendant Huffman responded that the chaplain was "working on this issue." *Id.*

12. On November 18, 2017, Nesby filed another grievance, addressed to

6

Defendant Ryals, which stated:

> I have been trying to have a bible study with the local Jehovah Witnesses since Oct 18, 2017 which this situation has not been resolved. This is the 10th grievance concerning this matter. 1. grievance filed. 2. grievance file to jail chaplain. 3. grievance file to Sergeant Page. 4. grievance file to Lt. Flowers. 5. grievance file to Sergeant Spivey. 6. grievance file to Capt. [Riedmueller]. 7. 2nd grievance file to Lt. Flowers. 8. 2nd grievance file to Capt. [Riedmueller]. … Each grievance from #5 was submitted with request for copies of grievance. No copies have been received and no bible study has been started. Thank you.

*Id. at 18.* On November 27, Defendant Huffman responded: "Detainee Nesby the Chaplain has been working on this. We do not provide copies of grievances to Detainees." *Id.*

13.   On November 21, 2017, Nesby filed two grievances asking for "the address to the local kingdom hall." *Id. at 16-17.* The same day, Defendant Spivey responded: "1700 Hairston St. Conway 72034." *Id.*

14.   On December 3, 2017, Nesby filed a grievance stating: "Still trying 2 have a study with Jehovah Witnesses." *Id. at 15.* On December 4, Defendant Huffman responded: "Spoke with the Chaplain Friday and he stated he has contacted the Kingdom Hall but they have not got back with him yet." *Id.*

15.   On December 13, 2017, Nesby filed a grievance, addressed as an "appeal" to Defendant Huffman, stating: "Trying to have a bible study with the Jehovah Witnesses. If you can't contact the Faulkner County hall call to the next county, Pulaski. There are many kingdom halls. This issue [has not] been resolved.

7

Thank you." *Id. at 12*. On December 20, a nonparty responded: "Chaplains will be notified." *Id.*

16. On December 27, 2017, Nesby filed a grievance, which he labeled as an "appeal," stating: "Request to have a bible study with the local Jehovah Witnesses." *Id. at 12*. On December 28, Defendant Huffman responded: "Detainee Nesby, the Chaplain has been in contact with the local church that you are inquiring about." *Id.*

17. On January 4, 2018, Nesby filed a grievance, addressed to Defendant Riedmueller, which stated: "I am submitting this grievance concern I have been trying since Oct to have a bible study with the local Jehovah's Witnesses and this issue has still not been resolved. Therefore I have been left with no other option but to file a 1983 form concerning my violation of my right to free religion." *Id. at 11*. On January 5, Defendant Huffman responded: "[T]he Chaplain has tried several times to contact the local Kingdom Hall. We can't force them to come here." *Id.*

18. On January 5, 2018, Nesby filed a grievance which stated: "So is there no other kingdom hall in Arkansas or am I just limited to Faulkner County because I know there is more than one kingdom hall that will come and study with me. They call that options. But if you feel like the federal courts will think it's ok than I guess you don't need to contact another one." *Id. at 10*. On January 8, Defendant Huffman responded: "Detainee Nesby you will need to speak to our Chaplains about that." *Id.*

8

19. On January 17, 2018, Nesby initiated this lawsuit. *Doc. 1*.

20. On January 31, 2018, Nesby filed a grievance requesting copies of all his "grievances and appeals concerning [his] request to study with the local Jehovah Witnesses for [his] lawsuit." *Doc. 26, Ex. A-2 at 3*.

21. On February 1, 2018, Nesby was released from the FCDC to the Arkansas Department of Correction. *Doc. 26, Ex. A-1 at 7*. Thus, he was incarcerated in the FCDC for a total of 106 days.

22. According to Defendant Huffman's Affidavit, he worked with the FCDC chaplain to accommodate Nesby's request, and the chaplain "reached out to the Jehovah's Witnesses in Faulkner County and could never get anyone to offer materials or come to the [FCDC] to study with [Nesby]." *Doc. 26, Ex. B ¶ 3* (Huffman Aff.).

23. Nesby was provided with contact information for the Jehovah's Witnesses in Faulkner County. Throughout his incarceration in the FCDC, Nesby was free to call or write any Jehovah's Witness representative or Kingdom Hall he desired and make arrangements for a bible study with someone from that congregation. *Id. ¶ 4*.

24. FCDC policy provides that all detainees have "the right to freedom of religion so long as the practice of religious beliefs does not adversely affect the security or good order of the detention facility." *Doc. 26, Ex. A-3 at 3* (FCDC

Policies), *& Ex. A ¶ 6* (Riedmueller Aff.).

### III. Discussion

#### A. RLUIPA Claim

Courts have uniformly held that RLUIPA does not permit monetary awards against prison officials, even when they are sued in their individual capacities. *See Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014); *Berger v. Kelley,* No. 5:17cv00258-BRW-JTR, 2018 WL 4291788, at *5 (E.D. Ark. Aug. 16, 2018); *Epp v. Frakes*, No. 4:16cv3176, 2017 WL 2608694, at *6 (D. Neb. June 15, 2017) (summarizing cases).

Because Nesby seeks only damages in this case, his RLUIPA claim should be dismissed, with prejudice.

#### B. First Amendment Claim

In his pleadings, Nesby alleges that: (1) Ryals refused his requests to arrange a visit with a spiritual advisor from the Jehovah's Witnesses, and told him "no one wanted to see him nor [were] they concerned with his religious issues"; and (2) Ryals, Riedmueller, Huffman and Spivey denied his "numerous grievances and appeals" concerning his requests "for spiritual counsel" and "to study with [his]

religious sect." *Doc. 1 at 4; Doc. 8 at 1.*[6]

The Free Exercise Clause of the First Amendment prevents prison officials from placing a "substantial burden" on a prisoner's ability to practice his religion. *Patel v. United States Bureau of Prisons,* 515 F.3d 807, 813 (8th Cir. 2008).[7] However, "[t]he Constitution does not require that a religious advisor be provided for every sect represented in a penitentiary. Nor does the Constitution require that prisoners be provided the religious advisor of their choice or one that belongs to their individual religious sect." *Blair–Bey v. Nix*, 963 F.2d 162, 163-64 (8th Cir. 1992) (citations omitted). Rather, prisoners must simply be afforded "reasonable opportunities … to exercise the religious freedom guaranteed" by the First Amendment. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972); *see also Tisdale v. Dobbs,* 807 F.2d 734, 740 (8th Cir. 1986) (prison "is obligated to afford [a prisoner] a reasonable opportunity to practice his faith," but need not provide "a chaplain, priest, or minister … without regard to the extent of the demand"); *SapaNajin v. Gunter,* 857 F.2d 463, 465 (8th Cir 1988) (noting "each inmate is not entitled to his own personal clergyman").

---

[6]Nesby also alleges that FCDC staff somehow violated his constitutional rights by refusing to give him copies of his grievances. *Doc. 8 at 1*. A prison grievance procedure is a procedural right only and does not confer upon an inmate any substantive rights. *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993). In any event, Defendants provided Nesby with copies of all his grievances in their summary judgment papers. *Doc. 26, Ex. A-2*.

[7]The free-exercise rights afforded pretrial detainees are the same as those for convicted inmates. *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).

It is undisputed that, as soon as Nesby filed a grievance requesting "a bible study with the local Jehovah Witnesses," Defendant Huffman responded and forwarded the request to the FCDC chaplain. Over the next four weeks, Huffman and Spivey promptly responded to the many grievances Nesby filed about the matter. Each time, Huffman and Spivey explained to Nesby that the chaplain had been made aware of his requests, which meant the chaplain was trying to arrange for someone from the Jehovah's Witnesses to visit the FCDC and meet with Nesby.

After the chaplain's efforts were unsuccessful, Spivey provided Nesby with the address of the local Kingdom Hall. On December 4, Huffman said that he had personally spoken to the chaplain about the matter, and that the chaplain had contacted the local Kingdom Hall and was awaiting a response. On December 28, Huffman again informed Nesby that the chaplain had been in contact with the local Kingdom Hall, but he "could never get anyone to offer materials or come to the [FCDC] to study with [Nesby]." *See Doc. 26, Ex. A-2 at 10-32 & Ex. B ¶ 3.*

Finally, Huffman's Affidavit makes it clear that Nesby was never prevented from reaching out to the Jehovah's Witnesses on his own to try to arrange a meeting with a spiritual advisor. *Doc. 26, Ex. Ex. B ¶ 4.* In none of Nesby's many grievances did he ever allege that any of the Defendants thwarted or interfered with his ability to write or call Jehovah's Witness representatives or Kingdom Halls to try to arrange a religious counseling session. This means Nesby did not try to arrange such a

meeting or, if he did, he met with no success in getting someone to meet with him, the same response the chaplain had received when he tried to arrange for a Jehovah's Witness representative to meet with Nesby.[8]

## IV. Conclusion

Despite repeated efforts by FCDC chaplains, no Jehovah's Witness representative was located that was willing to provide materials or come and study with Nesby. None of the Defendants obstructed or hindered Nesby from contacting Jehovah's Witness representatives or obtaining a spiritual advisor on his own. Likewise, Nesby was free to contact family-members or other members of his faith to try to arrange his own spiritual counseling sessions and obtain his own religious study materials. Finally, Nesby was free to conduct his own private bible study and pray in his cell, and to possess personal religious items and texts. While the Constitution prohibits prison officials from *substantially burdening* a prisoner's ability to practice his religion, it does not require those officials to affirmatively provide the means for each prisoner to practice his or her preferred means of doing

---

[8]Nesby vaguely alleges that unidentified "staff … refused to even send out any correspondence to the religious affiliation, Kingdom Hall of Jehovah's Witnesses, in order to arrange for a spiritual advisor to come and visit and or confer with [him.]" *Doc. 8 at 1*. Importantly, Nesby does *not* allege in his pleadings, nor did he assert in any of his grievances, that Defendants (or anyone else) refused to send out *his* personal correspondence, but only that the staff members failed to correspond in writing with any Jehovah's Witness representatives. Again, it is undisputed that the FCDC chaplain was "in contact" with the local Kingdom Hall.

so.[9] Thus, Defendants' inability to locate a Jehovah's Witness spiritual advisor for Nesby and have that advisor provide Nesby with religious study materials, did not "substantially burden" Nesby's free exercise of his religious beliefs.

Accordingly, the Court concludes that Defendants are entitled to summary judgment and all of Nesby's claims should be dismissed, with prejudice.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (*Doc. 24*) be GRANTED.

2. This action be DISMISSED, WITH PREJUDICE, in its entirety.

DATED this 15th day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9]*See Gladson v Iowa Dept. of Corr.,* 551 F.3d 825, 831 (8th Cir. 2009) (holding that "[a] prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so").